FILED
COURT OF APPEALS
DIVISION II

2015 MAY 19 AM 9: 06

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

WANDA RILEY-HORDYK,

               Appellant,

v.

BETHEL SCHOOL DISTRICT,

               Respondent.

No. 45830-6-II

PUBLISHED OPINION

MELNICK, J. — Bethel School District (District) nonrenewed Wanda Riley-Hordyk's employment contract, effective at the end of the 2011-2012 school year, because the District closed the online school where she held the position of principal. A hearing officer upheld the District's decision to nonrenew Riley-Hordyk's contract, and the superior court affirmed the hearing officer's decision. Riley-Hordyk appeals from the superior court's order affirming the nonrenewal, arguing that the District's nonrenewal of her contract and its subsequent refusal to transfer her to an open principal position violated the collective bargaining agreement (CBA), the continuing contract statute,[1] and our decision in *Peters v. South Kitsap School District No. 402*, 8 Wn. App. 809, 509 P.2d 67 (1973). We disagree and affirm the superior court.

## FACTS

Riley-Hordyk served as a teacher and principal at Bethel High School until issues arose concerning her performance during the 2009-2010 school year. Near the end of the 2009-2010 school year, the District demoted Riley-Hordyk from her principal position at Bethel High School to a subordinate position at the Bethel Online Academy (BOA). Then at the end of the 2009-2010 school year, the District nonrenewed her employment contract because of unprofessional conduct.

---

[1] RCW 28A.405.210.

Riley-Hordyk filed a lawsuit against the District and the parties settled the suit. As part of this settlement, Riley-Hordyk became the principal of the Bethel Online Academy (BOA). The District classified Riley-Hordyk as a secondary principal and paid her at the level of an elementary school principal. She was also subject to the terms and conditions of the CBA negotiated between the District and the principals' union.

On February 28, 2012, due to financial issues, the District's board of directors unanimously voted to close BOA effective the following school year. The District projected that BOA would lose $330,000 in the 2012-2013 school year because of reduced state funding, administrative burdens, and decreased enrollment. Riley-Hordyk repeatedly requested that the District transfer her into another principal position within the District. Each time, the District refused her request. The District told Riley-Hordyk that she needed to submit an application to be considered for open principal positions and that the CBA did not provide her a right to transfer into one of the positions.[2] The District invited Riley-Hordyk to apply for open positions through the normal process.

On May 9, the District notified Riley-Hordyk that probable cause existed to nonrenew her employment contract at the end of the 2011-2012 school year. The District informed Riley-Hordyk that her position was being eliminated due to "insufficient revenue to maintain the current level of programs and services in the District." Clerk's Papers (CP) at 381. This elimination occurred because of "the overall financial situation of the District, changes in the school funding formula,

---

[2] The CBA specifically addressed rights of administrators to transfer to other positions, providing that "non-interim administrators in good standing, who lose their positions due to a reduction in force, will be considered for a contract for an open teaching position for which he/she is qualified." Clerk's Papers (CP) at 402. It is undisputed that there were no open teaching positions for which Riley-Hordyk was qualified.

2

student enrollment, and the overall needs of the District." CP at 381. The District stated that Riley-Hordyk's performance did not factor into the decision to nonrenew her contract. The District referred to Riley-Hordyk's contract's nonrenewal as a "[r]eduction in [f]orce" under the CBA.[3] CP at 382.

Despite eliminating Riley-Hordyk's principal position, the total number of principals in the District for the 2012-2013 school year remained unchanged from the previous year because concurrent with its closure of BOA, the District re-opened an elementary school that had been previously closed for renovation. In addition to Riley-Hordyk's position, the District also eliminated six assistant principals' positions. All six displaced assistant principals applied for open positions within the District, and five of them were hired into other positions. Riley-Hordyk applied for a single elementary school principal position, but she did not appear for the interview because she believed that it conflicted with her son's graduation.[4] She also applied for various associate administrator positions, but she did not receive invitations for interviews.

Riley-Hordyk appealed her contract's nonrenewal.[5] After hearing testimony, the hearing officer made the following findings of fact:

- Riley-Hordyk was employed at BOA on a continuing contract basis;

- BOA was projected to lose $330,000 in the 2012-2013 school year as a result of reduced allotments and increased recordkeeping and compliance requirements;

---

[3] The CBA did not define the term "reduction in force."

[4] Riley-Hordyk's son's graduation began at 2:00 P.M. The District accommodated her by moving her interview from 11:00 A.M. to 9:15 A.M. This change would have allowed her to finish her interview at 12:00 P.M. Riley-Hordyk believed "this will still be cutting it close" and asked for another reschedule, which the District did not provide. CP at 522. Ultimately, Riley-Hordyk did not attend her interview.

[5] An appeal before a hearing officer is authorized under RCW 28A.405.210 and RCW 28A.405.310.

3

- BOA was closed for financial reasons, and Riley-Hordyk's employment nonrenewed;

- Riley-Hordyk asked to be transferred to other principal positions, but was denied;

- Riley-Hordyk failed to apply for any principal positions except for the elementary school position, for which she did not appear for her interview; and

- The District still had 27 principals following its reduction in force because it had re-opened an elementary school in accordance with a preexisting plan.

The hearing officer's conclusions of law included the following:

- BOA was closed in good faith, as there was no evidence of pretext or ill-will towards Riley-Hordyk;

- Riley-Hordyk was subject to a reduction in force, meaning that the District had no obligation under the CBA to transfer her to another principal position;

- *Peters* does not articulate a "blanket transfer policy" and does not contemplate a situation in which there is a collective bargaining agreement in place; CP at 18;

- The District was not obligated to transfer Riley-Hordyk to a principal position.

Implicitly the hearing officer concluded that sufficient cause[6] existed to nonrenew Riley-Hordyk's contract.

Riley-Hordyk appealed the hearing officer's decision to the Pierce County Superior Court, which affirmed the hearing officer's decision. Riley-Hordyk appeals.

---

[6] The continuing contract statute uses the term "probable cause" to describe the cause required for a school district to nonrenew an employee's contract, and uses the term "sufficient cause" to refer to the cause required to justify the district's determination in the event it is challenged. *See* RCW 28A.405.210 ("In the event it is determined that there is *probable cause* or causes that the employment contract of an employee should not be renewed by the district, . . . [e]very such employee so notified . . . shall be granted opportunity for hearing . . . to determine whether there is *sufficient cause* or causes for nonrenewal of contract."). (Emphasis added.). We follow the statute in using "probable cause" to refer to the district's determination of cause and using "sufficient cause" to refer to a hearing officer's or a court's evaluation of that cause.

ANALYSIS

Riley-Hordyk argues that the District's nonrenewal of her contract and its subsequent refusal to transfer her to an open principal position violated the CBA, the continuing contract statute, and our decision in *Peters*, 8 Wn. App. 809. Because none of these authorities entitles Riley-Hordyk to the relief she seeks, we hold that the hearing officer did not err by upholding the District's nonrenewal of her contract and the rejection of her requests to transfer to open principal positions.. Accordingly, we affirm the superior court.

I.  STANDARD OF REVIEW

Under RCW 28A.405.340(5), we review a hearing officer's factual determinations under the "clearly erroneous standard." *See Clarke v. Shoreline Sch. Dist. No. 412*, 106 Wn.2d 102, 109-10, 720 P.2d 793 (1986) (relying on former statute); *Griffith v. Seattle Sch. Dist. No. 1*, 165 Wn. App. 663, 670, 266 P.3d 932 (2011). A factual determination is clearly erroneous if it is not supported by substantial evidence in the record, which is evidence sufficient to persuade a fair-minded person of the finding's truth or correctness. *Campbell v. Emp't Sec. Dep't*, 180 Wn.2d 566, 571, 326 P.3d 713 (2014); *Clarke*, 106 Wn.2d at 121. Errors of law are reviewed de novo. RCW 28A.405.340(4); *Clarke*, 106 Wn.2d at 109. When reviewing the application of the law to the facts, we determine the applicable law de novo and give deference to the hearing officer's factual determinations, reviewing them under the clearly erroneous standard. *Clarke*, 106 Wn.2d at 109-10.

Like the superior court sitting in its appellate capacity, we confine our review of the hearing officer's decision to the verbatim transcript and the evidence admitted at the hearing. *See* RCW 28A.405.340. We review the hearing officer's findings of fact and conclusions of law; we give no deference to the superior court's decision. *Griffith*, 165 Wn. App. at 671.

II.    NONRENEWAL FOR CAUSE—CONTINUING CONTRACT STATUTE

Riley-Hordyk asserts that the District violated her statutory continuing contract rights by nonrenewing her contract without probable cause. Specifically, she argues that the hearing officer erred by finding financial necessity led to the nonrenewal rather than finding that the District nonrenewed her contract as a means to retaliate against her in bad faith. She further argues that the hearing officer erred by concluding that the renewal was a reduction in force because the number of District principals remained the same in the year after the nonrenewal. We disagree with Riley-Hordyk.

A.    Statutory Overview

Riley-Hordyk's employment is governed, in part,[7] by the continuing contract statute, RCW 28A.405.210, which addresses the employment, discharge, and reduction in rank of teachers and administrators.[8] *See Issaquah Educ. Ass'n v. Issaquah Sch. Dist. 411*, 104 Wn.2d 443, 446-47, 706 P.2d 618 (1985) (discussing former continuing contract statute). The continuing contract statute empowers school boards to employ teachers and administrators for not more than one year. RCW 28A.405.210. It further provides that the one-year contracts are automatically renewed for the next year unless certain events occur. RCW 28A.405.210. This statute "is similar to tenure

---

[7] Riley-Hordyk's employment is also governed by the CBA. "The general relationship between school authorities and teachers in the public schools of our state is created by contract and governed by general principles of contract law." *Tondevold v. Blaine Sch. Dist. No. 503*, 91 Wn.2d 632, 635, 590 P.2d 1268 (1979). Yet, the language of the employment contract, here the CBA, is not the sole consideration, because "the general law in force at the time of the formation of the contract is a part thereof." *Arnim v. Shoreline Sch. Dist. No. 412*, 23 Wn. App. 150, 153, 594 P.2d 1380 (1979). The continuing contract statute is one such general law.

[8] Riley-Hordyk also cites to RCW 28A.405.230, which establishes the process for transfer of an administrator to a subordinate certificated position. That statute is inapplicable because Riley-Hordyk was not transferred to a subordinate position. Moreover, the statute does not vest any *right* to transfer in an administrator. It merely states that an administrator "shall be subject to transfer" at the expiration of his or her contract. RCW 28A.405.230.

laws" because it "affords reemployment rights to all covered employees." *Moldt v. Tacoma Sch. Dist. No. 10*, 103 Wn. App. 472, 482, 12 P.3d 1042 (2000).

    B.    Statutory Procedure to Terminate Reemployment Rights

An employee's reemployment rights "may be involuntarily cut off only if the statutory procedure is followed." *Arnim v. Shoreline Sch. Dist. No. 412*, 23 Wn. App. 150, 154, 594 P.2d 1380 (1979). That procedure requires the employer to provide timely notice of nonrenewal, including the probable cause or causes for the nonrenewal, and an opportunity for a sufficient cause hearing.[9] RCW 28A.405.210. If the employer fails to do so, then the employee is "conclusively presumed to have been reemployed by the district for the next ensuing [one-year] term." RCW 28A.405.210.

Here, the District provided Riley-Hordyk with timely notice of nonrenewal, which included the District's reasons for its determination that probable cause existed to terminate her employment. She also received a sufficient cause hearing where she presented extensive evidence and argument. Riley-Hordyk does not challenge the procedural aspects of the nonrenewal. Therefore, the District discharged its duties under the continuing contract statute so long as probable cause supported its decision to nonrenew Riley-Hordyk's contract.

    1.    Sufficient Cause—Financial Exigency

Riley-Hordyk assigns error to the hearing officer's conclusion of law that the nonrenewal of her contract was supported by sufficient cause. She argues that the hearing officer erred by finding her contract was nonrenewed as a result of financial necessity and that the hearing officer should have found the District retaliated against her in bad faith. We disagree.

---

[9] The hearing is provided for in RCW 28A.405.310.

The District informed Riley-Hordyk that it was nonrenewing her contract for financial reasons. The District provided the following statement of probable cause to Riley-Hordyk:

> There is insufficient revenue to maintain the current level of programs and services in the District. The Board of Directors met and determined that certain programs needed to be modified or eliminated. One of the eliminated programs is the Bethel Online Academy. In reaching its decision, the Board of Directors considered the overall financial situation of the District, changes in the school funding formula, student enrollment, and the overall needs of the District. As a result of the Board's action, your position was eliminated.

CP at 381.

A district's "adverse financial condition" may constitute sufficient cause to nonrenew an employee's contract. *Barnes v. Seattle Sch. Dist. No. 1*, 88 Wn.2d 483, 487, 563 P.3d 199 (1977). The question of whether specific conditions constitute sufficient cause is a mixed question of law and fact that is subject to de novo review. *See Clarke*, 106 Wn.2d at 111.

The hearing officer's conclusion that sufficient cause existed to support the District's nonrenewal of Riley-Hordyk's contract is supported by the foregoing case law and the hearing officer's findings of facts. The hearing officer found that the District in general and BOA in particular were in financial distress. Riley-Hordyk does not assign error to these findings,[10] and therefore they are verities on appeal. *Yuchasz v. Dep't of Labor & Indus.*, 183 Wn. App. 879, 886, 335 P.3d 998 (2014); *Fisher v. Tacoma Sch. Dist. No. 10*, 53 Wn. App. 591, 595, 769 P.2d 318 (1989).

---

[10] But even if she did, they are supported by substantial evidence in the record. Uncontroverted testimony at the hearing showed that the District had lost a total of 26 million dollars in funding in recent years, requiring the District to "cut just about everything [it] could possibly cut to maintain core services." CP at 67. Uncontroverted testimony showed that the legislature reduced the state allotment for online schools, reporting requirements became more burdensome, and enrollment was less than half what the District projected. As a result, BOA was projected to lose $330,000 in the 2012-2013 school year.

The hearing officer also found that the District exercised good faith judgment when it decided to close the BOA.[11] Riley-Hordyk assigned error to this factual conclusion, but it is supported by substantial evidence in the form of other unchallenged findings of fact that: (1) the District relied on a variety of sources, including the work product of several District employees and their financial committees; (2) the decision was made after a public hearing, Board consideration, and vote; and (3) there was no evidence of pretext or ill-will directed towards Riley-Hordyk.[12] Therefore, we hold that the hearing officer's factual conclusion that the District exercised good faith judgment when it decided to close the BOA is not clearly erroneous. Moreover, whether the District exercised its judgment in good faith is akin to a credibility determination, which we do not disturb on appeal. *See Griffith*, 165 Wn. App. at 672.

Given the dire financial straits of the District, the District's decision to close down the BOA, and the resulting elimination of Riley-Hordyk's position, the hearing officer did not err in concluding that sufficient cause existed to nonrenew Riley-Hordyk's contract.

### 2. Reduction in Force

Riley-Hordyk next assigns error to the hearing officer's conclusion of law that the nonrenewal of her contract based on the closure of the BOA constitutes a "reduction in force." Br. of Appellant at 2. She argues that her contract's nonrenewal resulted not from a reduction in force, but out of retaliation for her prior litigation against the District. Further, she argues that the hearing

---

[11] Although the hearing officer labeled this finding of good faith as a conclusion of law, good faith is typically understood as a question of fact. *See, e.g., Marthaller v. King County Hosp. Dist. No. 2*, 94 Wn. App. 911, 916, 973 P.2d 1098 (1999). A finding of fact that is mislabeled as a conclusion of law will be reviewed as a finding of fact. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

[12] This factual findings was also mislabeled as a conclusion of law.

officer's conclusion that the nonrenewal was a reduction in force was error because the number of principals in the District remained unchanged in the year after the nonrenewal.

The term "reduction in force" does not play a pivotal role in this case. Riley-Hordyk's focus on whether a reduction in force occurred is misguided because it does not affect whether the District had probable cause to nonrenew Riley-Hordyk's contract, which is the real issue here. The term reduction in force does not appear in the continuing contract statute, and its only mention in the CBA relates to a right to transfer, which we discuss below. *See* RCW 28A.405.210. Likewise, the hearing officer's only reference to reduction in force pertains to a potential right to transfer in the CBA. Riley-Hordyk's argument conflates "reduction in force" with probable cause to terminate her contract, but we do not. Reduction in force is not a term that has any bearing on the District's probable cause determination.

III.    RIGHT TO TRANSFER

A.    No Right to Transfer Under *Peters*

Riley-Hordyk argues that pursuant to *Peters*, 8 Wn. App. 809, the District was required to offer her any principal positions that opened prior to the expiration of her existing contract. We disagree.

In *Peters*, we considered what duties, if any, a school district owes to an employee whose contract was nonrenewed for financial reasons, with respect to vacancies that might occur before the expiration of the employee's existing contract. 8 Wn. App. at 815. We held that a school district "may not approach the task of selecting personnel to fill vacancies that occur after some [employees' contracts] have been nonrenewed without first giving effect to the continuing contract rights of those nonrenewed [employees]." *Peters*, 8 Wn. App. at 816. In short, a school district

must continue the contracts of those employees who have qualifications that satisfy its needs even if that means reconsidering a nonrenewal. *Peters*, 8 Wn. App. at 816.

Riley-Hordyk claims that *Peters* supports her assertion that the District was required to transfer her into a vacant principal position for which she was qualified. *Peters* did not, however, involve a collective bargaining agreement that provided the employees' exclusive rights to transfer into open positions. 8 Wn. App. at 810-17. Indeed, *Peters* predates the collective bargaining agreement statute (i.e., the Educational Employment Relations Act), chapter 41.59 RCW. These facts are significant because it is well settled that provisions in a collective bargaining agreement do control over certain conflicting statutory provisions.

A union may lawfully bargain away, i.e., "waive," certain statutory rights of represented employees in a collective bargaining agreement, but statutorily created private rights that serve public policy purposes cannot be waived. *Shoreline Cmty. Coll. Dist. No. 7 v. Emp't Sec. Dep't*, 120 Wn.2d 394, 409-10, 842 P.2d 938 (1992) (holding that a purported waiver of unemployment benefits is void against public policy); *Hitter v. Bellevue Sch. Dist. No. 405*, 66 Wn. App. 391, 397-99, 832 P.2d 130 (1992) (holding that right to attorney fees was not a minimum substantive guaranty to individual workers and, therefore, collective bargaining provision took precedence over statute that provided attorney fees). For example, in *Hitter*, we distinguished between "minimum substantive guarant[ies] to individual workers," such as rights to receive minimum wage and overtime pay and to be free from unlawful discrimination, which cannot be waived, and a wrongfully discharged employee's right to receive reasonable attorney fees in connection with a judgment for wages or salary, which may be bargained away in a collective bargaining agreement. 66 Wn. App. at 399.

Riley-Hordyk argues that *Peters* gives her the right to transfer into an open position. We disagree because Riley-Hordyk's CBA waived the statutory right to transfer discussed in *Peters*. A statutory right can be waived in a collective bargaining agreement if it is not in the category of minimum substantive guaranties to individual workers. *Shoreline Cmty. Coll. Dist. No. 7*, 120 Wn.2d at 409-10; *Hitter*, 66 Wn. App. at 399. A right to transfer into an open position after nonrenewal is fundamentally different from rights that courts have interpreted as minimum substantive guaranties to individual workers, such as rights to minimum wage and overtime pay, unemployment benefits, and to be free of discrimination. *See Shoreline Cmty. Coll. Dist. No. 7*, 120 Wn.2d at 409-10; *Hitter*, 66 Wn. App. at 398-99. Rather, a right to transfer into an open position after nonrenewal is more aligned with rights that may be waived by a collective bargaining agreement, such as the statutory right to reasonable attorney fees in connection with a judgment for wages or salary. *See Hitter*, 66 Wn. App. at 397-99; *see also Shoreline Cmty. Coll. Dist. No. 7*, 120 Wn.2d at 409-10. We hold that the statutory right to transfer discussed in *Peters* is not in the category of minimum substantive guaranties to individual workers. Therefore, an employee's statutory right to transfer under the continuing contract statute can be waived or altered by a collective bargaining agreement.

Here, the CBA controls principals' rights to transfer to open positions upon nonrenewal of their contracts: "non-interim administrators in good standing, who lose their positions due to a reduction in force, will be considered for a contract for an open teaching position for which he/she is qualified." CP at 402. The parties to the CBA specifically contemplated a situation like the present case and bargained for a specific outcome that is inconsistent with the result in *Peters*. Because the right to transfer conferred by *Peters* is not in "the category of a minimum substantive guaranty to individual workers, which cannot be waived by the exercise of collective rights," we

hold that Riley-Hordyk waived any remedy under *Peters* by entering into the CBA. *Hitter*, 66 Wn. App. at 399. We hold that the *Peters* ruling and rationale did not entitle Riley-Hordyk to transfer to an open position. Riley-Hordyk's right to transfer after a nonrenewal of her contract is controlled solely by the CBA.

B.     No Right to Transfer Under the CBA

Riley-Hordyk next argues that the CBA required the District to transfer her into an open principal position. We disagree.

The only mention in the CBA of a right to transfer is as follows:

> In the absence of a reduction in force among Bethel Education Association staff, non-interim administrators in good standing, who lose their positions due to a reduction in force, will be considered for a contract for an open teaching position for which he/she is qualified.

CP at 402. The language of the CBA does not support Riley-Hordyk's argument. The CBA provides that where an administrator loses her position due to a reduction in force, she would only be "considered for a contract for an open *teaching* position." CP at 402 (emphasis added). The first clause of the applicable CBA provision limits Riley-Hordyk's right to transfer to an open teaching position. Under that clause, an administrator like Riley-Hordyk would be considered for an open teaching position only if the Bethel Education Association staff are not also experiencing a reduction in force. The CBA does not provide administrators a right to transfer into open *principal positions*.

Assuming the most favorable conditions to Riley-Hordyk—that a reduction in force led to Riley-Hordyk's contract being nonrenewed, but the Bethel Education Association staff was not also experiencing a reduction in force—she was entitled to be "considered for a contract for an open teaching position for which [she was] qualified." CP at 402. Uncontroverted testimony at

the hearing established that Riley-Hordyk was endorsed to teach only one subject—Spanish—and that no teaching positions existed for which she qualified.

Because no Spanish teaching positions were open to offer Riley-Hordyk, the District did not violate the duties it owed under the CBA. Because the CBA does not provide Riley-Hordyk a right to transfer to an open principal position within the district, the hearing officer did not err by concluding that the District had no obligation to transfer her to another principal position. Accordingly, we affirm the superior court in affirming the hearing officer.

Melnick, J.

We concur:

Worswick, P.J.

Sutton, J.