# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TERI CAMPBELL, | No. 46067-0-II |
| Respondent, | |
| v. | |
| TACOMA PUBLIC SCHOOLS, a.k.a. TACOMA PUBLIC SCHOOL DISTRICT NO. 10. | PUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Tacoma Public Schools (the District) suspended teacher Teri Campbell for 15 days without pay and imposed a 3-year drug testing requirement because she violated District Policy 5201 by not reporting to the District the medications she was taking that could have potentially affected her ability to work safely and productively. A hearing officer upheld the District's decision and the superior court reversed. The District appeals.

We hold that (1) Policy 5201 is not unconstitutionally vague, (2) there is substantial evidence to support the hearing officer's findings of fact and conclusions of law upholding the District's probable cause determination, (3) the imposed sanction of a 15-day unpaid suspension and a 3-year drug testing requirement is not arbitrary, capricious, or contrary to law, and (4) the superior court's award of attorney fees and costs to Campbell under RCW 28A.405.350 was not supported by any findings and was improper. Further, because Campbell does not prevail on appeal, we deny her request for attorney fees and costs on appeal.

Accordingly, we reverse the superior court's judgment and order and its award of attorney fees and costs under RCW 28A.405.350. We reinstate the hearing officer's decision upholding the District's probable cause determination and the sanction imposed, and deny Campbell's request for attorney fees and costs on appeal.

FACTS

Teri Campbell is a certificated teacher in the District and has taught at Mason Middle School since 2004. In 2006, doctors diagnosed her with Guillain-Barre Syndrome, a medical condition resulting in chronic pain, that required Campbell to have a pain pump implanted the following year to manage her symptoms. Campbell disclosed the pain pump to her principal, Patrice Sulkosky, but did not disclose the specific medications that the pump delivered.

On November 2, 2011, Campbell passed out as she drove to work and struck another vehicle in the oncoming lane of traffic. The officer responding to the collision discovered a tin containing 45 Xanax pills in Campbell's purse, and Campbell admitted to smoking marijuana a few days before the accident. As a result, the officer arrested Campbell, and she ultimately pled guilty to vehicular assault.

After recovering from her injuries, Campbell returned to work on January 2, 2012. The District placed Campbell on paid administrative leave on January 5 to conduct an internal investigation of the circumstances surrounding the collision and her arrest. The District sought to determine whether Campbell intended to report to work under the influence.

During the investigation, Campbell and her doctors provided the District with a list of her prescribed medications, and the doctors explained in their letters to the District that none of the medications impaired Campbell's ability to teach or carry out her job duties. On September 26,

No. 46067-0-II

Gayle Elijah, the District's Director of Human Resources, advised Campbell in a letter that the District discovered that Campbell failed to disclose a number of prescription medications that she was taking. The District cited the following relevant medications: Metoclopramide, Acyclovir, Estradiol, Tapentadol, Zolpidem, Alprazolam, Lisinopril, Levothyroxine, Sufentanil, and Bupivacain. Because these medications "are known or advertised as possibly affecting" Campbell's ability to perform her job safely and productively, the District alleged that she had violated Policy 5201 by failing to report them. Clerk's Papers (CP) at 788-91.

District Policy 5201, *Drug Free Schools, Community and Workplace*, states in relevant part:

> Any staff member who is taking a drug or medication whether or not prescribed by the staff member's physician, which may adversely affect that staff member's ability to perform work in a safe or productive manner is required to report such use of medication to his or her supervisor. This includes drugs which are known or advertised as possibly affecting judgment, coordination, or any of the senses, including those which may cause drowsiness or dizziness. The supervisor in conjunction with the district office then will determine whether the staff member can remain at work and whether any work restrictions will be necessary.

CP at 809.

Based on the alleged violations of Policy 5201, the District advised Campbell that it was considering terminating her employment and scheduled a *Loudermill*[1] hearing to allow Campbell to respond to the allegations. At the *Loudermill* hearing, Campbell did not dispute that she took the medications listed in Elijah's letter or that the medications had the listed side effects.

---

[1] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487 (1985) (holding that public employees facing termination have a right to the opportunity to respond pretermination).

3

On December 5, 2013, District Superintendent Santorno informed Campbell in writing that,

> I have determined that there is probable cause to suspend you without pay for fifteen (15) work days. *In addition*, you will be required to submit to random drug tests for a period of three (3) years, and to comply with all District Policies and Procedures, *including* identifying to your supervisor any and all drugs or medications that you are taking that may impact your ability to perform work in a safe and productive matter (sic) as required under District Policy.

CP at 313 (emphasis added). The District found that Campbell violated the reporting requirement in District Policy 5201 by failing to report to her supervisor that she was taking drugs or medications that "are known or advertised as possibly affecting" her ability to work safely and productively.[2] CP at 304.

Campbell appealed the District's probable cause determination to a hearing officer.[3] At the hearing, Campbell admitted, and the hearing officer found, that, although Campbell told Principal Sulkosky that she had a pain pump, Campbell never disclosed the medications administered in her pain pump or any of her other medications to Principal Sulkosky or anyone else at the District. The hearing officer found that, although Campbell relied solely on her doctor's letters and expert testimony that she did not suffer actual side effects, she never disputed her medication usage or their potential side effects as alleged by the District. The hearing officer also found that Campbell had failed to report those medications. Based on these findings, the hearing

---

[2] The District sought to discipline Campbell on two other alleged violations for which the hearing officer found the District lacked probable cause for discipline. Those two issues were not before the superior court and are not before us on appeal.

[3] RCW 28A.405.310.

No. 46067-0-II

officer concluded that, "Policy 5201 is clear that any such use [of medications] must be reported,"

CP at 18, and that the District had:

> sufficient cause for discipline of Ms. Campbell on the basis that Ms. Campbell failed to report to her supervisor that she was taking drugs or medication that might adversely affect her ability to perform work in a safe or productive manner.

CP at 19.

Campbell appealed the hearing officer's decision to superior court. Campbell disputed only the hearing officer's Finding of Fact No. 21,[4] and because there was no evidence that Campbell actually suffered any adverse side effects, Campbell argued that the District's list of medications and their side effects were insufficient to uphold the hearing officer's conclusion that the District had probable cause to sanction her for violating Policy 5201.[5]

The superior court reversed the hearing officer's decision that upheld the District's probable cause determination. In its ruling, the superior court stated that Policy 5201 was void for vagueness because it lacked specificity as to "who determines which drugs or medications may adversely affect" a teacher's work performance and "what would constitute sufficient reporting." CP at 1492-93. The superior court also ruled that there was "no cognitive evidence" to support the District's probable cause determination because Campbell was on "a stable opioid therapy and other medications that would not adversely affect her judgment, coordination, and senses." CP at

---

[4] Finding of Fact No. 21 stated, "[Campbell] did not report to Ms. Sulkosky that she had the Xanax pills in her possession at school." CP at 15. This finding is not before us on appeal, and is not relevant to our analysis.

[5] In her appeal to superior court, Campbell did not assign specific error to any of the other findings of fact and does not dispute them. Therefore, these other findings of fact are verities on appeal. *Riley-Hordyk*, 187 Wn. App. 748, 758-59, 350 P.3d 681 (2015).

5

1494, 1496. The superior court did not reach the sanction issue but stated that the sanction was reviewable on appeal. The court then awarded Campbell $49,476.11 in attorney fees and costs under RCW 28A.405.350. The District appeals.

## ANALYSIS

The District argues that the superior court erred when it concluded that (1) the District Policy 5201 was unconstitutionally vague and unenforceable, (2) substantial evidence did not support the District's probable cause determination or the hearing officer's decision, and (3) the sanction was reviewable. It also argues that, without any findings that the District acted in bad faith or upon insufficient legal grounds, the superior court's award of attorney fees and costs to Campbell was improper under RCW 28A.405.350. We agree with the District. In addition, we review the sanction and we find that it is not arbitrary, capricious, or contrary to law.

### I. VAGUENESS

The District argues that the superior court erred when it held that Policy 5201 is unconstitutionally vague. We agree.

We examine the validity of an agency rule de novo. *Marcum v. Dep't of Soc. and Health Serv.*, 172 Wn. App. 546, 556, 290 P.3d 1045 (2012). Under the Administrative Procedure Act (APA)[6], we may declare an agency rule invalid if the rule violates constitutional provisions. RCW 34.05.570(2)(c); *Marcum*, 172 Wn. App. at 556. We have a duty to construe an administrative rule or statute to avoid constitutional questions where such construction is reasonably possible. *Arnett v. Kennedy*, 416 U.S. 134, 162, 94 S. Ct. 1633, 40 L. Ed. 2d 15 (1975). When construing

---

[6] Ch. 34.05 RCW.

an undefined term in a rule, we give the term its ordinary, common, everyday meaning. *Stastny v. Bd. of Tr. of Cent. Wash. Univ.*, 32 Wn. App. 239, 253, 647 P.2d 496 (1982). We presume regulations and statutes are constitutional; however, rules imposing sanctions for unprofessional conduct must not be unconstitutionally vague. *Keene v. Bd. of Accountancy*, 77 Wn. App. 849, 854, 894 P.2d 582 (1995).

A rule is void for vagueness if "it is framed in terms so vague that persons of 'common intelligence must necessarily guess at its meaning and differ as to its application.'" *Keene*, 77 Wn. App. at 854 (internal quotation marks omitted) (quoting *Haley v. Med. Disciplinary Bd.*, 117 Wn.2d 720, 739, 818 P.2d 1062 (1991)). A rule must provide an explicit standard to prevent arbitrary and discriminatory enforcement. *Stastny¸* 32 Wn. App. at 253. But a rule is not void for vagueness simply because it uses vague terms or fails to list every possible prohibited behavior, and we do not analyze portions of a rule in isolation from the context in which they appear. *Hayley*, 117 Wn.2d at 741; *Keene*, 77 Wn. App. at 854. If, as a whole, a rule has the required degree of specificity, then it can withstand a vagueness challenge despite its use of terms or phrases which, when considered in isolation, have no determinate meaning. *Haley*, 117 Wn. 2d at 741. To determine whether Policy 5201 is unconstitutionally vague as applied, we determine whether the policy, when read as a whole, gave Campbell adequate notice of what was prohibited or required to comply, and whether it was sufficiently specific to prevent the possibility of arbitrary enforcement.

Here, the superior court held that Policy 5201 was unconstitutionally vague for three reasons. First, the superior court stated that Policy 5201 did not identify "who determines" what drugs "may adversely affect [a teacher's] ability to perform work in a safe or productive manner."

7

CP at 1492. The superior court's focus ignores the basis of the District's finding that Campbell violated Policy 5201—that Campbell failed to report the drugs or medications she was taking that "are known or advertised" as possibly affecting judgment.[7] Regardless of whether or not the medications actually had adverse effects on her performance, Policy 5201 expressly required Campbell to report her medications because they "were known or advertised" as possibly having adverse effects. CP at 809. The duty to report does not require that anyone determine whether or not her medications had any actual adverse effects on her ability to perform her job safely and productively. Thus, because the duty to report is not dependent upon a determination of whether the medications actually adversely affect the staff member, Policy 5201 is not unconstitutionally vague on the basis that it fails to identify who determines which drugs or medications may adversely affect a staff member's job performance.

Second, the superior court ruled that Policy 5201 was unconstitutionally vague because it "fails to mandate any degree of specificity for reporting," leaves "persons of ordinary intelligence to guess at what would constitute sufficient reporting," and leads to arbitrary enforcement. CP at 1493-94. Policy 5201 requires that "[a]ny staff member" taking a drug or medication, whether prescribed by their physician or not, to report the usage of the drug or medication if it "may adversely affect" the staff member's safe and productive job performance or if it is "known or advertised" as possibly affecting judgment or the senses. CP at 809. Although the policy does not

---

[7] The superior court did not address or acknowledge the language of Policy 5201's reporting requirement, that school district employees are required to report to their supervisor any drugs or medications they are taking that "are known or advertised as possibly affecting judgment, coordination, or any of the senses, including those which may cause drowsiness or dizziness," but only focused on the language regarding drugs "which may adversely affect" the teacher's ability to perform work in a safe or productive manner. CP at 809.

specifically state that the staff member must report the dosage of a drug, it does require reporting the use of the drug or medication.

Policy 5201 does not define the term "drug" or "medication." CP at 809. Thus, we give those terms their ordinary, common everyday meaning. A "drug" is a substance that is

> recognized in an official pharmacopoeia or formulary; a substance intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or other animals; a substance other than food intended to affect the structure or function of the body of [a human] or other animal . . . a narcotic substance of preparation; [and] something that is narcotic in its effect.

MERRIAM–WEBSTER UNABRIDGED, available at http://unabridged.merriam-webster.com. A "medication" is "a medical substance." *Id.* Giving the terms "drug" and "medication" their ordinary, common, everyday meaning, and reading Policy 5201 as a whole, it is reasonable to infer that "drug" and "medication" mean the specific name of the drug or medication administered to and taken by the staff member. *See Stastny*, 32 Wn. App. at 253.

Policy 5201's use of broad terms or its failure to list every possible prohibited behavior does not invalidate the policy. *See Keene*, 77 Wn. App. at 854-55. Although Campbell reported her pain pump to her supervisor, she did not disclose the names of the medications administered in her pain pump or any of the other medications she took that could have potentially affected her judgment or senses. Under a plain reading of Policy 5201, Campbell was required to report the names of all of the medications administered to and taken by her to constitute sufficient reporting. Because Policy 5201 requires reporting of the actual drug or medication that the staff member uses, it gave Campbell notice of what constitutes sufficient reporting. Thus, Policy 5201 has the required degree of specificity to overcome the vagueness challenge and provides an explicit standard, reporting the usage of *the* drug or medication, to avoid the risk of arbitrary enforcement.

9

Third, the superior court ruled that Policy 5201 was void for vagueness because it failed to define what the term "taking" means. When construing an undefined term in a rule, we give the term its ordinary, common, everyday meaning. *Stastny*, 32 Wn. App. at 253. The definition of "take," the root form of "taking," when referring to consuming a substance is, "to introduce or receive into one's body (as by eating, drinking, or inhaling)." MERRIAM–WEBSTER UNABRIDGED, available at http://unabridged.merriam-webster.com.

Campbell testified that she was "taking" the medications in the list given to the District, including oral pain medications, Xanax, and sleeping pills. She testified that her pain pump administered pain medications on a dosage schedule and that she took a number of her medications orally. Under a plain meaning of "taking," Policy 5201 requires staff members to report all drugs and medications consumed, at any time, which "may adversely affect that staff member's ability to perform work in a safe or productive manner" including those "known or advertised as possibly affecting judgment, coordination, or any of the senses, including those which may cause drowsiness or dizziness." CP at 809. Thus, Policy 5201's failure to define "taking" does not render it unconstitutionally vague.

Although Policy 5201 is not a model of clarity, under a plain reading it is not unconstitutionally vague. Accordingly, we hold that the superior court erred when it ruled Policy 5201 was unconstitutionally vague.

## II. SUBSTANTIAL EVIDENCE

The District next argues that the superior court erred because it failed to give the appropriate deference and apply the correct standard of review to the hearing officer's unchallenged findings of fact regarding Campbell's failure to report her medications to her

supervisor, and that there was substantial evidence to support the hearing officer's findings of fact which supported the hearing officer's conclusions of law. We agree.

We confine our review of the hearing officer's decision to the verbatim transcript and the evidence admitted at the hearing and give no deference to the superior court's ruling. RCW 28A.405.340; *Riley-Hordyk*, 187 Wn. App. at 756. Under RCW 28A.405.340(5), we review a hearing officer's factual determinations under the "'clearly erroneous standard.'" *Riley-Hordyk*, 187 Wn. App. at 755 (quoting *Clarke v. Shoreline Sch. Dist. No. 412*, 106 Wn.2d 102, 109-10, 720 P.2d 793 (1986).

A finding is clearly erroneous if it is not supported by substantial evidence in the record. *Clarke*, 106 Wn.2d at 121. Substantial evidence is evidence sufficient to persuade a fair-minded person of the finding's truth or correctness. *Campbell v. Emp't Sec. Dep't*, 180 Wn.2d 566, 571, 326 P.3d 713 (2014). Unchallenged findings of fact are verities on appeal. *Riley-Hordyk*, 187 Wn. App at 758-59; *In re Disciplinary Proceeding Against Jones*, 182 Wn.2d 17, 35, 338 P.3d 842 (2014). We review the hearing officer's conclusions of law and its ultimate conclusion de novo and uphold the hearing officer's conclusions of law and ultimate conclusion if they are supported by the findings of fact. *Jones*, 182 Wn.2d at 35.

The hearing officer's findings of fact support the District's conclusion that there was sufficient cause for the District to discipline Campbell for violating Policy 5201. The hearing officer found that Campbell did not report the specific medications in her pain pump or her other medications to Principal Sulkosky, and Campbell did not dispute the medications or their listed potential side effects. The hearing officer also found that the undisputed potential side effects of the medications could have potentially affected Campbell's ability to perform her job safely and

productively. Campbell does not assign error to these findings,[8] and therefore, they are verities on appeal.

Thus, we hold that the undisputed findings of fact support the hearing officer's conclusion that the District had sufficient cause to sanction Campbell for violating Policy 5201 by failing to report her medications that could have potentially affected her ability to perform her job safely and productively. Accordingly, we reinstate the hearing officer's decision upholding the District's probable cause determination.

### III. SANCTION

Next, the District argues[9] that the superior court erred in not deferring to the District's choice of sanction under our precedent in *Simmons v. Vancouver School District No. 37*.[10] In the alternative, the District argues that, if we do review the choice of sanction, its choice of sanction is not arbitrary, capricious, or contrary to law. We depart from our precedent and review the District's choice of sanction. After review, we hold that the District's sanction is not arbitrary, capricious, or contrary to law.

---

[8] Campbell disputes only the hearing officer's Finding of Fact No. 21.

[9] The District also argued that the District's collective bargaining agreement (CBA) preempts Campbell from challenging the drug-testing requirement. The CBA specifically exempts "[a]ny matter involving employee probation procedures, discharge, nonrenewal, adverse effect, or reduction in force," from its four-step grievance procedure. CP at 707. The manner in which the District imposed the drug-testing requirement is similar to a probation condition, and does have an adverse effect on Campbell's employment contract. Thus, because of the specific exemptions, the CBA does not preclude Campbell from challenging the imposed drug-testing requirement.

[10] 41 Wn. App. 365, 704 P.2d 648 (1985).

In *Simmons*, we held that, once probable cause is determined, we do not reach review of the District's imposed sanction on a teacher because "determination of the sanction to be imposed is within the province of the District." *Simmons v. Vancouver Sch. Dist. No. 3741*, 41 Wn. App. 365, 704 P.2d 648 (1985). However, *Simmons*, was decided before our legislature enacted the 1988 Administrative Procedure Act. *See* RCW 34.05.001. Because RCW 28A.405.340, also enacted after our decision in *Simmons*, follows the "arbitrary and capricious" standard of RCW 34.05.570, we adopt the procedure set forth in *Griffith v. Seattle School District No. 1*,[11] as the modern standard of review for school district sanctions under RCW 28A.405.340.

"Once sufficient cause is established, the choice of sanction is a policy decision made by the district that we review to determine if it is arbitrary, capricious, or contrary to law." *Griffith v. Seattle Sch. Dist. No. 1*, 165 Wn. App. 663, 675, 266 P.3d 932 (2011) (citing *Butler v. Lamont Sch. Dist. No. 246*, 49 Wn. App. 709, 712, 745 P.2d 1308 (1987)). An arbitrary and capricious action is "'willful and unreasoning action, without consideration and in disregard of facts and circumstances.'" *Cummings v. Dep't of Licensing*, 189 Wn. App. 1, 25, 355 P.3d 1155 (2015) (internal quotation marks omitted) (quoting *Heinmiller v. Dep't of Health*, 127 Wn.2d 595, 609, 903 P.2d. 433 (1995)).

The "'harshness'" of an agency's sanction is not the test for whether the sanction is arbitrary and capricious. *Cummings*, 189 Wn. App. at 26 (quoting *Heinmiller*, 127 Wn.2d at 609). "'Where there is room for two opinions, action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached.'" *Cummings*, 189 Wn. App. at 25-26

---

[11] 165 Wn. App. 663, 266 P.3d 932 (2011).

(internal quotation marks omitted) (quoting *Heinmiller*, 127 Wn.2d at 609). Because we give an agency's choice of sanction considerable judicial deference, our scope of review here is narrow, and the challenger of the sanction carries a heavy burden. *Cummings*, 189 Wn. App. at 26.

Here, the hearing officer found that, although she reported her pain pump, Campbell failed to report the medications administered by her pain pump as far back as 2007, four years before her November 2011 vehicle collision and arrest. Campbell knew about the reporting requirement; she told Principal Sulkosky that she was on pain medications, but failed to report the specific medications she was taking. Campbell also testified that she had not reported to Principal Sulkosky every medication change her doctor made to her pain pump. The hearing officer also found that Campbell consumed a number of other medications that could have potentially affected her ability to safely perform her job functions and that she never disputed taking the medications or their reported side effects. Based on its findings, the hearing officer determined that the District had sufficient cause to suspend Campbell and impose the drug-testing requirement.

The hearing officer's findings support the conclusion that there was sufficient cause for a 15-day suspension without pay. Under RCW 28A.405.060, the District was within its power to suspend Campbell without pay for failing to comply with the reporting requirement in Policy 5201. Additionally, because Campbell admittedly did not report any medication changes in the pain pump to Principal Sulkosky, the findings support the conclusion that there was sufficient cause to impose the drug-testing requirement to ensure she complies with Policy 5201's reporting requirement.

Campbell argues that her suspension is unsupported, and that the drug-testing requirement is *ultra vires*. However, Campbell fails to provide evidence that, by imposing sanctions, the

District has treated her differently from any other teacher in a similar situation. *See Griffith*, 165 Wn. App. at 675 (noting that the imposed sanction on Griffith was consistent with the imposed sanction on another teacher for violating the same policy). Thus, we affirm the hearing officer's determination that the District had sufficient cause to impose a 15-day unpaid suspension for violating Policy 5201 and a 3-year drug-testing requirement to ensure compliance with Policy 5201. We further hold that the imposed sanction is not arbitrary, capricious, or contrary to law.

## IV. ATTORNEY FEES AND COSTS

Finally, the District argues that the superior court erred by awarding Campbell attorney fees and costs without making any findings under RCW 28A.405.350 to support the award. We agree.

The court may award an employee reasonable attorney fees and costs if the employee prevails and if the court finds that the district's probable cause determination was made in bad faith or upon insufficient legal grounds. RCW 28A.405.350. But the superior court did not make any such findings related to the District's probable cause determination.

Absent such findings, Campbell was not entitled to attorney fees and costs under RCW 28A.405.350, and the superior court erred in awarding $49,476.11 in attorney fees and costs to her.

## V. ATTORNEY FEES ON APPEAL

Campbell asks us to award her attorney fees and costs on appeal under RAPs 14.2, 14.3, and 18.1. However, because Campbell does not prevail in this appeal, we deny her request for an award of attorney fees and costs under RAPs 14.2, 14.3, and 18.1.

No. 46067-0-II

CONCLUSION

We hold that (1) Policy 5201 is not unconstitutionally vague, (2) there is substantial evidence to support the hearing officer's decision upholding the District's probable cause determination, (3) the imposed sanction of a 15-day suspension and a 3-year drug testing requirement is not arbitrary, capricious, or contrary to law, and (4) the superior court's award of attorney fees and costs under RCW 28A.405.350 was unsupported and improper. Further, because Campbell does not prevail on appeal, we deny her request for attorney fees and costs under RAPs 14.2, 14.3, and 18.1.

Accordingly, we reverse the superior court's judgment and order and its award of attorney fees and costs under RCW 28A.405.350. We reinstate the hearing officer's decision upholding the District's probable cause determination, and deny Campbell's request for attorney fees and costs on appeal.

SUTTON, J.

We concur:

WORSWICK, P.J.

LEE, J.

16